UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| FORD MOTOR CREDIT COMPANY LLC | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No.: |
| | ) |
| FINCANNON FORD, INC., f/k/a | ) |
| FINCANNON FORD-MERCURY, INC., | ) |
| LINDA MUGHMAW, a/k/a | ) |
| LINDA FINCANNON, | ) |
| WORLD GLOBAL CAPITAL, LLC | ) |
| d/b/a FAST CASH ADVANCE, AND | ) |
| GREEN CAPITAL FUNDING, LLC, | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT FOR DAMAGES AND REPLEVIN**

Plaintiff Ford Motor Credit Company LLC ("Ford Credit"), by and through its attorneys, for its *Complaint for Damages and Replevin* against Fincannon Ford, Inc., f/k/a Fincannon Ford-Mercury, Inc. ("Fincannon Ford" or "Dealer"), and Linda Mughmaw a/k/a Linda Fincannon ("Ms. Mughmaw"), alleges as follows:

**NATURE OF THE ACTION**

1. Ford Credit brings this action to, among other things: enforce its rights as a secured creditor under a series of agreements with defendant automobile dealership Fincannon Ford (which received floor plan financing through Ford Credit); recover indebtedness that Fincannon Ford owes to Ford Credit; enforce the personal guaranty made to Ford Credit by Ms. Mughmaw; and determine the rights of World Global Capital, LLC ("Fast Cash") and Green Capital Funding, LLC ("Green Capital"), if any, in and to the collateral in which Ford Credit claims a superior interest.

2. Fincannon Ford is in default, having breached its agreements with Ford Credit by, among other things: failing to remit to Ford Credit unpaid balances for vehicles sold, leased, or placed in use; making false and misleading statements to Ford Credit; and purporting to grant Fast Cash and Green Capital a security interest in collateral and proceeds of collateral in which Ford Credit holds a properly-perfected first-priority security interest and which, pursuant to its agreements with Ford Credit, Fincannon Ford was required to keep free of other encumbrances or liens.

3. Ford Credit has demanded that Fincannon Ford pay Ford Credit the balances due under its financing agreements with Ford Credit, but Fincannon Ford has failed or refused to do so.

4. Ford Credit has also requested that Fincannon Ford surrender vehicles and other items of collateral to Ford Credit that are subject to Ford Credit's first-priority, properly-perfected security interest, but Fincannon Ford has failed or refused to do so.

5. Accordingly, Ford Credit brings this action.

## THE PARTIES

6. Ford Credit is a limited liability company organized under the laws of the State of Delaware, and is authorized to do business in Indiana. Ford Credit's sole member is Ford Holdings LLC, a limited liability company organized under the laws of the State of Delaware with a principal place of business located at One American Road, Dearborn, Michigan 48126. Ford Holdings LLC is directly wholly owned by Ford Motor Company, a Delaware corporation with a principal place of business located at One American Road, Dearborn, Michigan 48126.

7. Ford Credit's principal place of business is located at One American Road, Dearborn, Michigan 48126. On or about April 20, 2007, Ford Motor Credit Company converted from a Delaware corporation to a Delaware limited liability company pursuant to Sections 228 and 266 of the Delaware General Corporation Law. This conversion was effective on May 1, 2007, and, pursuant to the relevant statutes, Ford Motor Credit Company LLC is deemed the same entity as Ford Motor Credit Company by operation of law. Copies of Ford Credit's conversion filings with the U.S. Securities and Exchange Commission, including its Certificate of Conversion, are attached as **Exhibit A**.

8. Accordingly, for jurisdictional purposes, Ford Credit is a citizen of Delaware and Michigan.

9. Fincannon Ford is a corporation organized under the laws of the State of Indiana, with a principal place of business located at 1510 N. Walnut Street, Hartford City, Indiana 47348.

10. Accordingly, for jurisdictional purposes, Fincannon Ford is a citizen of Indiana, and is subject to personal jurisdiction in Indiana.

11. Ms. Mughmaw is an individual, domiciled at 9418 E. 300 N., Van Buren, Indiana 46991, and is both a Dealer principal and a guarantor of the indebtedness of Fincannon Ford.

12. Accordingly, for jurisdictional purposes, Ms. Mughmaw is a citizen of Indiana, and is subject to personal jurisdiction in Indiana.

13. Fast Cash is a limited liability company organized under the laws of the State of New York, with an address at 116 Nassau Street, Suite 804, New York, New York 10038.

14. Based upon court filings made on behalf of Fast Cash in other cases, including in *Branch Banking and Trust Company v. Servifirst Bank, et al.*, 2:19-cv-00366 (S.D.W.V. 2019) (Dkt. No. 1); and *Kamphuis v. World Global Capital, LLC, et al.*, 2:18-cv-13439 (E.D.Mich. 2018) (Dkt. No. 1), all members of Fast Cash are citizens of New York and Fast Cash is a citizen of New York.

15. Accordingly, for jurisdictional purposes, Fast Cash is a citizen of New York.

16. Green Capital is a limited liability company organized under the law of the State of New York, with an address at address at 116 Nassau Street, Suite 824, New York, New York 10038.

17. Based upon court filings made on behalf of Green Capital in other cases, including in *Branch Banking and Trust Company v. Servifirst Bank, et al.*, 2:19-cv-00366 (S.D.W.V. 2019) (Dkt. No. 1); and *Kamphuis v. World Global Capital, LLC, et al.*, 2:18-cv-13439 (E.D.Mich. 2018) (Dkt. No. 1), all members of Green Capital are citizens of New York and Green Capital is a citizen of New York.

18. Accordingly, for jurisdictional purposes, Green Capital is a citizen of New York.

**JURISDICTION AND VENUE**

19. This Court has jurisdiction over the case pursuant to 28 U.S.C. § 1332(a), as there exists complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

20. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because the events, transactions and omissions giving rise to the claims in this action

occurred in Blackford County, Indiana; and the property that Ford Credit seeks to replevin is located within Blackford County, Indiana.

**THE AGREEMENTS BETWEEN FORD CREDIT,
FINCANNON FORD, AND MS. MUGHMAW**

**A.   The Automotive Wholesale Plan Application for Wholesale Financing
and Security Agreement**

21.   On or about January 24, 1986, Fincannon Ford executed and delivered to Ford Credit an Automotive Wholesale Plan Application for Wholesale Financing and Security Agreement (the "Wholesale Agreement"). A copy of the Wholesale Agreement is attached as **Exhibit B**.

22.   Fincannon Ford executed the Wholesale Agreement to induce Ford Credit to extend a wholesale line of credit to Fincannon Ford (to be used to finance new and used motor vehicles, and commonly known as floorplan financing) and provide other financing accommodations to Fincannon Ford. Ex. B, preamble.

23.   Amounts advanced by Ford Credit pursuant to the Wholesale Agreement are called "Advances." *Id*. at ¶ 1.

24.   Fincannon Ford agreed to "pay to Ford Credit, upon demand, the unpaid balance (or so much thereof as may be demanded) of all Advances plus Ford Credit's interest and flat charges with respect thereto . . . ." *Id.* at ¶ 3.

25.   In exchange for the financing provided under the Wholesale Agreement, Fincannon Ford granted Ford Credit a security interest in, among other collateral, the motor vehicles financed, their proceeds, and rebates or refunds owed to Fincannon Ford. *See id.* at ¶ 4.

26. Fincannon Ford also agreed, at all times, to maintain insurance on the collateral that was subject to Ford Credit's security interest and to keep the vehicle inventory and related "merchandise" collateral free of any other liens or encumbrances. *Id.* at ¶¶ 5, 6.

27. Events of default under the Wholesale Agreement are defined to include, without limitation:

> (a) Dealer shall fail to promptly pay any amount now or hereafter owing to Ford Credit as and when the same shall become due and payable, or
>
> (b) Dealer shall fail to duly observe or perform any other obligation secured hereby, or
>
> (c) Any representation made by Dealer to Ford Credit shall prove to have been false or misleading in any material respect as of the date on which the same was made, or
>
> (d) A proceeding in bankruptcy, insolvency or receivership shall be instituted by or against Dealer or Dealer's property.

*Id.* at ¶ 9.

28. Upon default, Ford Credit is entitled to accelerate, and declare immediately due and payable, any or all of the Advances, plus accrued interest and flat charges, and to take immediate possession of all property in which it has a security interest. *Id.* at ¶ 9.

29. In the event that Ford Credit is required to resort to legal process to enforce its rights under Wholesale Agreement, Fincannon Ford has agreed "to pay reasonable attorneys' fees and legal expenses incurred by Ford Credit in connection with the repossession and sale of any such property." *Id*. at ¶ 9.

B. **The Security Agreement**

30. On or about September 15, 1998, Fincannon Ford executed and delivered a Security Agreement to Ford Credit (the "Security Agreement"). A copy of the Security Agreement is attached as **Exhibit C**.

31. Pursuant to the Security Agreement, Fincannon Ford granted Ford Credit a security interest in:

> (a) All furniture, fixtures, machinery, supplies and other equipment.
>
> (b) All motor vehicles, tractors, trailers, implements, service parts and accessories and other inventory of every kind.
>
> (c) All accounts, contract rights, chattel paper, and general intangibles.

32. The term "Collateral" will be used throughout the remainder of this Complaint to refer, collectively, to all property, accounts, papers, and rights in which Fincannon Ford granted Ford Credit a security interest pursuant to the Wholesale Agreement and/or the Security Agreement.

C. **Personal Guaranties of Payment of Fincannon Ford's Indebtedness**

33. On or about January 24, 1986, Ms. Mughmaw executed and delivered to Ford Credit a Continuing Guaranty. A copy of the Guaranty is attached as **Exhibit D**.

34. Michael Fincannon also executed the Continuing Guaranty, but was subsequently released from it after his passing in January 2009.

35. Ms. Mughmaw, individually, is referred to as "the Guarantor."

36. The Guaranty was expressly made "to induce [Ford Credit] to make loans to and/or make advances" to Fincannon Ford under the Wholesale Agreement, and "to purchase or otherwise acquire retail installment sale contracts, conditional sale

contracts, chattel mortgages or other security instruments, or to otherwise extend credit to or do business with" Fincannon Ford.  Ex. D.

37. Pursuant to the Guaranty, the Guarantor "jointly and severally, and unconditionally" agreed that she would:

> [F]ully, promptly, and faithfully perform, pay and discharge all Dealer's present and future obligations to you; and agrees, without your first having to proceed against Dealer or to liquidate paper or any security therefore, to pay on demand all sums due and to become due to you from Dealer and all losses, costs, attorneys' fees or expenses which you may suffer by reason of Dealer's default, and agrees to be bound by and on demand to pay any deficiency established by a sale of paper or security held with or without notice to us; together with a reasonable attorney's fee (15% if permitted by law) if placed with an attorney for collection from us.

*Id*.

## THE COLLATERAL AND FORD CREDIT'S SECURITY INTEREST

38. The Collateral held and possessed by Fincannon Ford includes new and used motor vehicles that remain in its inventory, as listed on the attached **Exhibit E**.

39. The Collateral also includes, without limitation, Fincannon Ford's equipment, fixtures, furniture, demonstrators and service vehicles, supplies and machinery and other goods of every kind, motor vehicles, tractors, trailers, service parts and accessories and other inventory of every kind and any accessions thereto, accounts, instruments, chattel paper, general intangibles, contract rights, documents and supporting obligations thereto.  Ex. C (Security Agreement).

40. Throughout its history with Fincannon Ford, Ford Credit has maintained a first priority, perfected security interest in the Collateral by filing financing statements, continuations, and amendments with the Indiana Secretary of State.  Attached

as **Exhibit F** is a copy of the November 8, 2019 State of Indiana Office of Secretary of State Debtor Search Report for "Fincannon Ford, Inc.," summarizing Ford Credit's UCC filings.

41. Ford Credit filed its first financing statement with respect to Fincannon Ford on September 15, 1999, and filed timely amendments and continuations thereafter, which remain in full force and effect (and have been in full force and effect continuously since September 15, 1999). Ford Credit's September 15, 1999 financing statement, and Ford Credit's subsequent amendments and continuations, are attached as **Exhibit G**.

42. Fincannon Ford appears to have two other secured creditors, Fast Cash and Green Capital. It appears these creditors may have filed financing statements with respect to Fincannon Ford on March 23, 2016 and/or April 6, 2018. Both of these financing statements post-date Ford Credit's first-priority date of September 15, 1999.

### DEFAULTS BY FINCANNON FORD

43. On or about November 4, 2019, Ford Credit conducted an audit of the vehicle inventory at the dealership, and the dealership authorized an electronic funds transfer, in the amount of $1,008,747.56, for a number of units identified as sold during that audit and for which payment was then due.

44. On or about November 7, 2019, that electronic funds transfer was returned for non-sufficient funds, and the dealership was then out of trust, having sold vehicles that were subject to Ford Credit's security interests without remitting proceeds from those sales to Ford Credit.

45. Further and subsequent audits, conducted on November 8, 2019 and November 11, 2019, identified additional vehicles that were sold out trust, and a total Sold Out of Trust ("SOT") balance, as of November 13, 2019, of approximately $1,300,000.00.

46. Fincannon Ford's SOT balance will continue to fluctuate as additional vehicles are sold and any payments are received, but substantially all of SOT that existed as of November 13, 2019 remains outstanding.

47. The sale of vehicles out of trust is a violation of Fincannon Ford's agreements with Ford Credit, as was the return of the electronic funds transfer, and both constitute defaults under those agreements. *See* Ex. B at ¶ 9.

48. Ford Credit has since discovered that Fincannon Ford misrepresented sales dates of certain vehicles that it sold, and thereby delayed or avoided payment of amounts that were due to Ford Credit upon the sale of said vehicles.

49. As specific examples, but without limitation, Fincannon Ford misrepresented the sale dates of three vehicles that are included in the sold out of trust amount owed to Ford Credit. The table below summarizes these sales and Fincannon Ford's misrepresentation of sales dates regarding the same:

|   | VIN (Last 8) | Dealer's Stock Number | Sales Dates(s) Reported/Submitted to Ford Credit | Date Sold Per Dealer's Records | Payment Received by Dealer, Per Dealer Records | Wholesale/SOT Balance |
|---|---|---|---|---|---|---|
| 1 | KDF01554 | T1912 | 11/4/2019 | 9/25/2018 | 10/17/2018 | $45,994.08 |
| 2 | KDF05164 | T1945 | 11/4/2019 | 1/15/2019 | 5/2/2019 | $46,077.04 |
| 3 | KDF06606 | T1955 | 11/4/2019 | 4/1/2019 | 4/18/2019 | $48,492.04 |

50. This conduct was a further violation of the Wholesale Agreement, which defines default as, among other things, making false or misleading representations to Ford Credit.  *See id.* at ¶ 9.

51. On or about November 8, 2019 and November 12, 2019, Ford Credit sent demand letters to Fincannon Ford and the Guarantor, demanding immediate payment of the outstanding balance then owed to Ford Credit, including for the vehicles sold out of trust.  Ford Credit's November 8, 2019 demand letters are attached as **Exhibit H**.

52. Ford Credit has also learned that Fincannon Ford submitted false monthly financial reports to Ford Credit, which significantly overstated the dealership's cash on hand and failed to disclose factoring agreements entered into by the dealership.

53. Specifically, Fincannon Ford had entered into an agreement with Fast Cash, pursuant to which Fincannon Ford pledged to pay 25% of its future receipts to Fast Cash (up to a total of $524,625.00), pledged assets that were a part of Ford Credit's Collateral as security to Fast Cash (and allowed Fast Cash to encumber such assets and file UCC liens against them), and received $375,000.00 from Fast Cash in return ("Fast Cash Loan").  A copy of the Fast Cash Loan Agreement is attached as **Exhibit I**.

54. Fincannon Ford had also entered into an agreement with Green Capital, pursuant to which Fincannon Ford pledged to pay 25% of its future receipts to Green Capital (up to a total of $559,600.00, pledged assets that were a part of Ford Credit's Collateral as security to Green Capital (allowed Green Capital to encumber such asserts and file UCC liens against them) ("Green Capital Loan") and received $400,000.00 from Green Capital in return.  A copy of the Green Capital Loan Agreement is attached as **Exhibit J**.

55. Neither of these loans/factoring arrangements were disclosed by Fincannon Ford on its monthly financial statements submitted to Ford Credit.

56. Ford Credit has learned that the dealership kept a separate ledger, which did reflect these loans/factoring arrangements, as well as other relevant financial information that Fincannon Ford concealed from Ford Credit.

57. These acts constituted still further breaches of the Wholesale Agreement.

58. Based on all of the above, Fincannon Ford has breached the Wholesale Agreement and Security Agreement.

59. As of November 13, 2019, Fincannon Ford owed the following amounts to Ford Credit:

| | |
|---|---|
| Wholesale Outstandings (Less In-transit; includes sold out of trust ("SOT")/payoffs) | $3,608,832.12 |
| Returned Funds Transferred | $1,008,747.56 |
| Past Due Wholesale Charges | $   23,116.97 |
| Legal Expenses | $    7,500.00 |
| Subtotal | $4,648,196.65 |

60. As of the date of this Complaint, Fincannon Ford and the Guarantor have not paid the amounts due to Ford Credit, despite due demand for payment, and Fincannon Ford has refused to surrender the Collateral.

### FIRST CAUSE OF ACTION
**(Replevin)**

61. Paragraphs 1 through 60 are realleged.

62. Despite Ford Credit's demands upon Fincannon Ford to pay in full all amounts due and owing, payment has not been made.

63. The total principal amount owed by the Dealer for Advances used to acquire Vehicles, as of November 13, 2019 was $4,617,579.68.

64. Fincannon Ford continues to hold and possess the Collateral, which is subject to Ford Credit's first-priority, properly-perfected security interest.

65. The new and used motor vehicles that remain in its inventory, and which are subject to Ford Credit's security interest, are listed in the attached **Exhibit E**.

66. According to the terms of the Wholesale Agreement, and pursuant to Indiana Code 32-35-2, as applicable in the Federal courts pursuant to F.R.C.P. 64 and 65, Ford Credit is entitled to immediate possession of the Collateral, and has demanded its surrender.

67. The Collateral has not been taken for a tax, assessment, or fine under a statue, or seized under an execution or attachment against the property of Fincannon Ford.

68. The Collateral is located in Blackford County, Indiana.

69. Upon information and belief, the estimated value of the Collateral that Ford Credit seeks to replevin is $3,807,584.68.

70. Fast Cash and Green Capital are joined herein to answer for their interest, if any, in all or some of the Collateral.

WHEREFORE, Plaintiff Ford Motor Credit Company LLC requests that this Court:

a) Enter a final judgment granting Ford Credit possession of the Collateral;

b) Determine the interest of Fast Cash and Green Capital, if any, in all or some of the Collateral;

c) Award Ford Credit all actual attorney fees and costs of collection incurred to enforce its right to possession of the above Collateral; and

d) Award Ford Credit other further interim and final relief, including monetary damages and costs (including deterioration damages), as justice and equity require.

## SECOND CAUSE OF ACTION
### (Breach of Contract – Fincannon Ford)

71. Paragraphs 1 through 70 are realleged.

72. Fincannon Ford has failed to perform its obligations under the Wholesale Agreement specifically, but without limitation, by selling Vehicles out of trust and failing to pay upon demand the remaining amounts owed to Ford Credit, making false and misleading statements to Ford Credit, and causing and allowing assets that constitute Ford Credit's Collateral to become subject to liens and/or encumbrances in favor of parties other than Ford Credit.

73. Fincannon Ford's multiple breaches of its agreements with Ford Credit entitle Ford Credit to recover from Fincannon Ford as damages all amounts due under the Wholesale Agreement, together with Ford Credit's actual attorney fees and other costs of collection.

74. The total amount owed to Ford Credit, as of November 13, 2019, not including contractual interest that has accrued since that date, is $4,648,196.65 (the "Indebtedness," after crediting certain unapplied proceeds received by Ford Credit).

75. Interest continues to accrue on the principal amount of such Indebtedness.

76. Ford Credit has demanded that Fincannon Ford immediately pay all amounts it owes to Ford Credit.

77. Fincannon Ford has not paid the amounts owed, and has thereby breached – and is in default under – the Wholesale Agreement.

78. As a result, Ford Credit has been damaged in the amount of the Indebtedness.

79. Accordingly, Fincannon Ford is liable to Ford Credit for the Indebtedness, plus interest (which continues to accrue), as well as any additional expenses, costs, disbursements, and attorneys' fees Ford Credit has incurred, or will incur, in connection with its efforts to recover the Collateral, enforce the Wholesale Agreement, and collect the Indebtedness.

WHEREFORE, Ford Credit respectfully requests that the Court grant judgment in its favor against Fincannon Ford in the amount of $4,648,196.65, together with such additional costs, interest, attorney fees, and other and further relief as the Court deems proper.

### THIRD CAUSE OF ACTION
**(Breach of Guaranty)**

80. Paragraphs 1 through 79 are realleged.

81. As previously alleged, on or about January 24, 1986, Ms. Mughmaw executed a Continuing Guaranty with Ford Credit under which she jointly and severally, personally and unconditionally guaranteed the performance by Fincannon Ford of all duties and obligations due under the Wholesale Agreement.  Ex. D.

82. Ford Credit made written demand to the Guarantor that she immediately pay the amounts owed under the Guaranty.  Ex. H.

83. The Guarantor has not paid the amounts owed, and has thereby breached – and is in default under – the Guaranty.

84. Ford Credit is therefore entitled to recover from the Guarantor, as damages, all amounts due from or incurred as a result of the defaults by Fincannon Ford, together with attorney fees and other costs of collection.

85. Accordingly, the Guarantor is liable to Ford Credit for the Indebtedness, plus interest (which continues to accrue), as well as any other expenses, costs, disbursements, and attorneys' fees Ford Credit has incurred or will incur, in connection with Ford Credit's efforts to recover the Collateral, enforce the Wholesale Agreement and the Guaranty, and to collect the Indebtedness.

WHEREFORE, Ford Credit respectfully requests the Court to grant judgment in its favor against Linda Mughmaw, a/k/a Linda Fincannon, in the amount of $4,648,196.65, together with such additional costs, interest, attorney fees, and other and further relief as the Court deems proper.

### FOURTH CAUSE OF ACTION
**(Conversion)**

86. Paragraphs 1 through 85 are realleged.

87. Fincannon Ford has wrongfully appropriated and detained the Collateral and the proceeds of the Collateral by failing to pay Ford Credit the amounts due and owing for the same.

88. Ford Credit at no point authorized Fincannon Ford to make use of Ford Credit's Collateral, or the proceeds of the Collateral, without paying Ford Credit the amount of the wholesale credit extended with respect to the property sold.

89. As of November 13, 2019, Fincannon Ford has sold 34 vehicles out-of-trust totaling $1,296,056.56. The list of Vehicles sold out of trust is attached as **Exhibit K**.

90. Despite Ford Credit's demand upon Fincannon Ford for payment of the amounts due upon the sale of those Vehicles, payment has not been received.

91. Upon information and belief, Fincannon Ford has thereby unlawfully taken and asserted dominance over the Collateral, and the proceeds of the Collateral.

92. The acts described above constitute an unlawful conversion of Ford Credit's property, resulting in damage to Ford Credit.

WHEREFORE, Ford Credit respectfully requests the Court to grant judgment in its favor against Fincannon Ford in the amount of $1,296,056.56, together with such additional costs, interest, attorney fees, and such other and further relief as the Court deems proper.

### FIFTH CAUSE OF ACTION
### (Statutory Conversion)

93. Paragraphs 1 through 92 are realleged.

94. Indiana Statutes IC 35-43-4-3 and IC 34-24-3-1 authorize the recovery of treble damages in the event of knowingly or intentionally exerting unauthorized control over property of another person, including pecuniary losses, as well as reasonable attorney fees, costs, and other expenses.

WHEREFORE, Ford Credit respectfully requests the Court to grant judgment in its favor against Fincannon Ford in the amount of $3,888,169.68, together with such additional costs, interest, attorney fees, and other and further relief as the Court deems proper.

## **JURY DEMAND**

95. Ford Credit hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Harley K. Means
Harley K. Means, Atty. No. 23068-32
John J. Petr, Atty. No. 5707-49
KROGER, GARDIS & REGAS, LLP
111 Monument Circle, Suite 900
Indianapolis, Indiana  46204-5125
(317) 692-9000 Telephone
(317) 264-6832 Fax
hmeanse@kgrlaw.com
jpetr@kgrlaw.com
*Attorneys for Plaintiff*
*Ford Motor Credit Company LLC*