**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| FORD MOTOR CREDIT COMPANY LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 1:19-CV-502-HAB |
| | ) | |
| FINCANNON FORD, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This matter comes before the Court on Plaintiff's Motion for Entry of Default Judgment (ECF No. 61) and memorandum in support (ECF No. 62). Plaintiff seeks judgment in the amount of $1,407,612.74 against Defendants Matthew Fincannon ("Matthew") and Stanley Bourff ("Stanley"), both of whom have failed to answer or otherwise plead.

**A.     Procedural History**

On August 5, 2020, Plaintiff filed its Second Amended Complaint (ECF No. 54). The Second Amended Complaint stated two causes of action against Matthew and Stanley: Breach of Contract (*Id*. at 14) and Fraud (*Id*. at 16–18). Both men were served with the Second Amended Complaint on August 15, 2020. (*See* ECF Nos. 57, 58).

When Matthew and Stanley failed to appear or otherwise plead, Plaintiff filed its Application for Entry of Default (ECF No. 59) on September 15, 2020. The Clerk's Entry of Default (ECF No. 60) was entered the next day. Plaintiff now seeks the entry of a money judgment against the men.

**B.      Factual Allegations**

When evaluating a motion for default judgment, the Court takes all well-pleaded allegations of a complaint relating to liability as true. *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983). Accordingly, the Court relies on the facts as pled in Plaintiff's Second Amended Complaint.

The facts of this case stretch back to 1986 when Defendant Fincannon Ford entered into a Wholesale Plan Application for Wholesale Financing and Security Agreement (the "Agreement") with Plaintiff. Under the Agreement, Plaintiff agreed to advance funds to Fincannon Ford for the purposes of purchasing new and used car inventory. In turn, Fincannon Ford promised to reimburse Plaintiff when the individual vehicles were sold. Fincannon Ford's debt under the Agreement was personally guaranteed by Defendant Linda Mughaw. In addition, a separate Security Agreement executed in 1998 gave Plaintiff a security interest in virtually all Fincannon Ford's property to secure the debt under the Agreement.

In 2019, an audit conducted by Plaintiff found that Fincannon Ford was behind in payments by over one million dollars. Fincannon Ford agreed to pay the arrearage by electronic funds transfer, but the ETF bounced. Further audits found that Fincannon Ford had sold approximately $1.3 million in vehicles without making payments under the Agreement.

It appears that the arrearages were made possible by fraudulent conduct by Matthew and Stanley, formerly the CEO and General Manager of Fincannon Ford, respectively. The two men altered the sale dates for multiple vehicles to avoid making payments under the Agreement, prepared and submitted false monthly financial reports, and kept separate ledgers. It was also discovered that Fincannon Ford had taken out multiple loans, using property subject to Plaintiff's

security interests as collateral. In total, as of July 8, 2020, the amount outstanding under the Agreement was $1,491,739.10.

**C.      Legal Analysis**

"The basic effect of an entry of default . . . is that '[u]pon default, the well-pleaded allegations of a complaint relating to liability are taken as true.' The defaulting party cannot contest the fact of his liability unless the entry of default is vacated under Rule 55(c)." *VLM Food Trading Intern., Inc. v. Illinois Trading Co*., 811 F.3d 247, 255 (7th Cir. 2016) (citations omitted); 10 James W.M. Moore et al., MOORE'S FEDERAL PRACTICE § 55.32[1][a] (3d ed. 2013) ("The effect of an entry of default, if not set aside, is to establish the liability of the defaulting party as a basis for default judgment. After defaulting, a party has no right to dispute the issue of liability"). Default judgment, however, is not automatic. Plaintiffs seeking default judgment must demonstrate that they are entitled to judgment as a matter of law. *Cass Cnty. Music Co. v. Muedini*, 55 F.3d 263, 265 (7th Cir. 1995).

"Once the default is established, and thus liability, the plaintiff still must establish his entitlement to the relief he seeks." *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004). "'Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Id*. (quoting *Credit Lyonnais Securities (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)); *see also e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 604 (7th Cir. 2007) ("[A]lthough a default judgment establishes liability, it does not answer whether any particular remedy is appropriate").

1.      *The Well-Pleaded Facts Establish Liability*

Plaintiff's claims against Matthew and Stanley are two-fold. First, Plaintiff has alleged that the men defrauded Plaintiff by misrepresenting the financial situation of Fincannon Ford. Second, Plaintiff seeks to hold the men liable for breach of the Agreement via a "piercing the corporate veil" theory. The Court finds that the facts pled in the Second Amended Complaint establish liability under these theories.

a.      *Fraud*

While the federal rules generally provide for liberal notice pleading, Rule 9(b) requires that plaintiffs averring fraud state "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Specifically, Rule 9(b) requires plaintiffs to plead the "who, what, when, where, and how: the first paragraph of any newspaper story," of the "circumstances constituting fraud." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). "Rule 9(b) requires heightened pleading of fraud claims in all civil cases brought in the federal courts, whether or not the applicable state or federal law requires a higher standard of proving fraud." *Ackerman v. Nw. Mut. Life. Ins. Co*., 172 F.3d 467, 470 (7th Cir. 1999) (citing *Herman & McLean v. Huddleston*, 459 U.S. 375, 387–89 (1983)). This heightened pleading requirement is a response to the "great harm to the reputation of a business firm or other enterprise a fraud claim can do." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (internal citation omitted). Thus, "[a] plaintiff claiming fraud or mistake must do more pre-complaint investigation to assure that the claim is responsible and supported, rather than defamatory and extortionate." *Id*.

While the circumstances constituting fraud must be pleaded with particularity, a defendant's "[m]alice, intent, knowledge [or] other condition of mind . . . may be averred generally." Fed. R. Civ. P. 9(b); *see also DiLeo*, 901 F.2d at 627. In the Seventh Circuit, a plaintiff

4

who provides a "general outline of the fraud scheme" sufficient to "reasonably notify the defendants of their purported role" in the fraud satisfies Rule 9(b). *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992). "[F]air notice is '[p]erhaps the most basic consideration' underlying Rule 9(b)." *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777–78 (7th Cir. 1994) (quoting 5 Wright & Miller, Federal Practice and Procedure § 1298, at 648 (1969)). Further, when details of the fraud itself "are within the defendant's exclusive knowledge," specificity requirements are less stringent. *Jepson, Inc. v. Makita Corp*., 34 F.3d 1321, 1328 (7th Cir. 1994). Under those circumstances, the complaint must plead the grounds for the plaintiff's suspicions of fraud. *Bankers Trust Co. v. Old Republic Ins. Co*., 959 F.2d 677, 684 (7th Cir. 1992).

The Court finds that Plaintiff has pled facts that establish fraud. Plaintiff has alleged the who (Matthew and Stanley), the what (concealing the financial status of Finacannon Ford), the where (Fincannon Ford), the when (2018 and 2019), and the how (preparing false financial reports and keeping separate ledgers). These allegations would have reasonably notified Matthew and Stanely of their alleged roles in the fraud. Plaintiff has, therefore, established its entitlement to judgment as a matter of law.

**b.**   *Piercing the Corporate Veil*

"Veil-piercing is an equitable remedy governed by state law," here the law of Indiana where the alleged actions occurred. *Laborers Pension Fund v. Lay–Com, Inc*., 580 F.3d 602, 610 (7th Cir. 2009). Generally, Indiana courts are reluctant to disregard corporate identity and do so only to protect third parties from fraud or injustice when transacting business with a corporate entity. *Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC*, 870 N.E.2d 494, 504 (Ind. Ct. App. 2007); *Oliver v. Pinnacle Homes, Inc*., 769 N.E.2d 1188, 1191 (Ind. Ct. App. 2002); *Stacey–Rand, Inc. v. J.J. Holman, Inc*., 527 N.E.2d 726, 728 (Ind. Ct. App. 1988) ("[T]here are cases where, to prevent

fraud or injustice, it is necessary to disregard the fiction of distinct corporate existence, and to hold as a matter of equity that such separate legal entity does not exist."). The party seeking to pierce the corporate veil bears the burden of proving that the corporation is merely the instrumentality of another, and that misuse of the corporate form constitutes a fraud or promotes injustice. *Escobedo v. BHM Health Associates, Inc.*, 818 N.E.2d 930, 935 (Ind. 2004). In exercising its equitable powers to pierce a corporate veil, the trial court engages in a highly fact-sensitive inquiry. *Winkler v. V.G. Reed and Sons, Inc.*, 638 N.E.2d 1228, 1232 (Ind. 1994).

To decide whether the plaintiff has met its burden, a court considers whether the plaintiff has presented evidence showing:

> (1) undercapitalization; (2) absence of corporate records; (3) fraudulent representation by corporation shareholders or directors; (4) use of the corporation to promote fraud, injustice or illegal activities; (5) payment by the corporation of individual obligations; (6) commingling of assets and affairs; (7) failure to observe required corporate formalities; or (8) other shareholder acts or conduct ignoring, controlling, or manipulating the corporate form.

*Aronson v. Price*, 644 N.E.2d 864, 867 (Ind. 1994). This list of factors is not necessarily exhaustive, and all factors need not be shown to support a decision to pierce the corporate veil. *D.S.I. v. Natare Corp.*, 742 N.E.2d 15, 27 (Ind. Ct. App. 2000).

Here, the facts alleged by Plaintiff demonstrate undercapitalization, fraudulent representations by Matthey and Stanley, and payment by the corporation of individual obligations. (ECF No. 54 at 17). This is a close call but, in the absence of any defense, the Court finds that this is enough for the Court to pierce the corporate veil to impose liability on Matthew and Stanley. The two misused Fincannon Ford to promote fraud and injustice, supporting the use of the doctrine here. The two men can be held liable for the alleged breach of the Agreement.

2.      *The Court Cannot Enter a Money Judgment at this Time*

With liability having been established, the Court now turns to damages. Plaintiff seeks judgment against Matthew and Stanley in the amount of $1,491,739.10, the amount due Plaintiff under the Agreement. The Court sees two issues with Plaintiff's request.

The first is Plaintiff's request for damages without a hearing on the fraud claim. Although upon default the factual allegations of a complaint relating to liability are taken as true, those allegations relating to the amount of damages suffered are ordinarily not. *See Pope v. United States*, 323 U.S. 1 (1944); *Geddes v. United Financial Group*, 559 F.2d 557 (9th Cir. 1977). A judgment by default may not be entered without a hearing on damages unless the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits. *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

While breach of contract damages may be susceptible to ready ascertainment, damages for fraud are not. *See Dundee Cement Co.*, 722 F.2d at 1323–24. Defendant attempts to get around this complication in paragraph 96 of the Second Amended Complaint, wherein it alleges that the amount due under the contract was loaned "as [a] direct result of [Matthew] and [Stanley's] fraudulent representations." (ECF No. 54 at 18). Stated another way, all the outstanding amounts are the result of the alleged fraud.

The Court finds that the facts in the Second Amended Complaint do not support this conclusion. The Second Amended Complaint is not clear when the outstanding amounts were loaned or when the alleged fraud occurred. Plaintiff identifies three vehicles where sales dates were altered but does not account for the remaining funds. While some of the amounts may be attributable to Matthew and Stanley's fraud, the Court cannot conclude that the amounts are

liquidated or capable of ascertainment. Accordingly, a hearing would be necessary before damages could be awarded on the fraud claim.

That said, the Court finds that a hearing is not appropriate at this time. While the entry of default judgment against fewer than all defendants in an action is proper, a damages hearing may not be held until the liability of each defendant has been resolved. *Dundee Cement Co*., 722 F.2d at 1324; *In re Uranium Antitrust Litigation*, 617 F.2d 1248, 1262 (7th Cir. 1980). This is because, where liability is joint and several (as it would be in Plaintiff's breach of contract claims), a damage determination as to defaulted defendants risks inconsistent damage awards on a single claim. Here, Defendants Fincannon Ford and Linda Mughaw are actively defending Plaintiff's claims. (*See*, *e.g.*, ECF No. 56). Should they prevail, even in part, on Plaintiff's breach of contract claim, there would be different damage awards as to different Defendants in a joint and several liability claim, something that is prohibited under Seventh Circuit law. *In re Uranium Antitrust Litigation*, 617 F.2d at 1262. Thus, the Court cannot enter a money judgment on the breach of contract claim until the liability of all Defendants is determined.

While it is true that the fraud claims are not joint and several as to all Defendants, the Court finds no reason to expend judicial resources on a damage hearing for one claim while damages on a separate claim remains outstanding. Therefore, the Court will enter default judgment against Matthew and Stanley but will withhold any damage determination until the claims against the remaining Defendants are resolved.

**D.     Conclusion**

For the foregoing reasons, Plaintiff's Motion for Entry of Default Judgment (ECF No. 61) is GRANTED in part and DENIED in part. Default judgment is entered against Defendant's

Matthew Fincannon and Stanley Bourff. All proceedings related to damages on the claims against these Defendants are STAYED until the liability of the remaining Defendants is determined.

SO ORDERED on October 29, 2020.

s/ Holly A. Brady
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT